[Cite as *State v. Huge*, 2013-Ohio-2160.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                     :        APPEAL NO. C-120388
                                            TRIAL NO. B-1007369
    Plaintiff-Appellee,       :
                                            *O P I N I O N.*
  vs.                            :

THOMAS HUGE,                       :

    Defendant-Appellant.      :

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  May 29, 2013

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Bryan R. Perkins*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

SYLVIA S. HENDON, **Presiding Judge.**

{¶1}  Defendant-appellant Thomas Huge appeals from the trial court's judgment convicting him of felony murder and child endangering.  The victim of both offenses was Huge's 15-month-old daughter Kayli.

{¶2}  Huge challenges his convictions on the grounds that the trial court admitted irrelevant other-acts evidence; that the record contains repeated instances of prosecutorial misconduct; that text messages read by a state's witness had not been properly authenticated; that the trial court erred in refusing to grant a mistrial; that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence; that the trial court erred in failing to merge allied offenses of similar import; and that the cumulative effect of these errors deprived him of a fair trial.

{¶3}  We find no merit to Huge's arguments, and we affirm the judgment of the trial court.

### Statement of Facts

{¶4}  On September 7, 2010, Springfield Township paramedics were dispatched to Huge's home in response to an emergency call reporting a 15-month-old with trouble breathing.  Paramedic Matthew Morgan testified that the door to Huge's home was locked upon the paramedics' arrival, which was unusual in an emergency situation.  Huge opened the door holding his daughter, Kayli Bates, in his arms.  Morgan immediately noticed that the child was lifeless, so he instructed Huge to carry Kayli directly to the ambulance.  Huge told Morgan that Kayli often throws tantrums in which she holds her breath until she turns blue.  Kayli was wet, cold, had

no pulse, and was not breathing. Morgan performed CPR on Kayli while she was transported to the hospital. He checked her airways and found them unobstructed, although he noticed a small amount of what he described as white saliva-like material in her mouth. Morgan noticed multiple bruises on her body, and he notified the hospital that they were transporting a potential victim of child abuse. Kayli did not respond to the CPR efforts, and Morgan testified that, in his opinion, Kayli was already deceased prior to the paramedics' arrival.

{¶5} Tasha McGuire, a social worker with the Children's Hospital Mayerson Center that handles cases involving children who have been physically or sexually abused, had received a referral regarding Kayli and had responded to the hospital's trauma bay to see the child. She testified that Kayli had been pronounced dead shortly after arriving at the hospital. Huge arrived at the emergency room shortly thereafter with his mother and his three-year-old daughter, Karli Bates. Huge told McGuire that he had fed Kayli a bottle earlier in the morning, which she had finished fairly quickly. He said that Kayli had been walking around and playing in the living room while he did other things, and that he had found her on the kitchen floor not breathing. Huge told McGuire that Kayli fell down frequently as she was learning to walk, and that she often held her breath until she passed out. McGuire questioned Huge concerning a noticeable injury on Kayli's chin, and he told her that she had fallen the day before and had struck her chin on the coffee table.

{¶6} Dr. Robert Shapiro, director of the Mayerson Center, and Dr. Brooks Keeshin, a fellow in child abuse at the Mayerson Center, examined Kayli's body after resuscitation efforts had been terminated. The doctors had received a patient history on Kayli indicating that Huge had found Kayli unresponsive after having vomited,

and that she engaged in breath holding. Dr. Keeshin testified concerning the numerous bruises on Kayli's body. He stated that the injury to Kayli's chin was not consistent with her having fallen into a coffee table. Rather, Dr. Keeshin opined that the injury was more consistent with someone having grabbed Kayli's face. He further described the various bruises on Kayli's body. He testified that the bruises on Kayli's back were in an area not commonly injured by a fall, and that they were consistent with squeezing, or a direct blow or kick. Dr. Keeshin further testified that a child cannot die from passing out after holding his or her breath, because the child would resume breathing upon passing out. Regarding the petechial hemorrhages suffered by Kayli, Dr. Keeshin testified that this particular type of injury could result from strangulation or smothering. Based on the number of places where Kayli had suffered bruises, as well as the location of those bruises, Dr. Keeshin opined that Kayli had been a victim of child abuse.

{¶7} The testimony provided by Dr. Shapiro corroborated Dr. Keeshin's testimony. Dr. Shapiro testified that the bruising on Kayli's chin could not have been caused by a household fall, but was more consistent with having been caused by fingertips. He further testified that the petechial injuries found on Kayli's neck were strangulation-type injuries. In Dr. Shapiro's opinion, Kayli did not die as a result of choking on her vomit because, had that been the case, vomit would have been found in Kayli's lungs. Dr. Shapiro likewise opined that Kayli had been an abused child.

{¶8} Hamilton County deputy coroner Jennifer Schott performed an autopsy on Kayli. She testified that Kayli's cause of death was asphyxia with findings consistent with smothering and neck compression. Dr. Schott found bruises of varying colors on Kayli's body, indicating that Kayli had received the bruises at

differing times. She testified that Kayli's injuries could not be explained by a child holding her breath and falling after passing out, and that Kayli's had not died from choking on her vomit because she had found no aspirate in the child's lungs.

{¶9}     Huge was indicted for aggravated murder under R.C. 2903.01(C), two counts of murder under R.C. 2903.02(B), felonious assault under R.C. 2903.11(A)(1), and two counts of child endangering under R.C. 2919.22(B)(2). Following a jury trial, Huge was found not guilty of aggravated murder, but was found guilty of all remaining charges. After merger of various offenses by the trial court, Huge was convicted of murder under R.C. 2903.02(B) and one count of child endangering. He received an aggregate sentence of 23 years' to life imprisonment.

### Other-Acts Evidence

{¶10}  In his first assignment of error, Huge argues that the trial court erred by admitting irrelevant and prejudicial other-acts evidence under Evid.R. 404(B).

{¶11}  Under Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." But the rule further provides that such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). Generally, we review a trial court's admission of evidence for an abuse of discretion. *State v. Truitt*, 1st Dist. No. C-050188, 2011-Ohio-1885, ¶ 8, citing *State v. Maurer*, 15 Ohio St.3d 239, 264-265, 473 N.E.2d 768 (1984).

{¶12}  Huge first argues that the testimony offered by Stacia Storer, an investigator with the Hamilton County Department of Children's Services, was improper under Evid.R. 404(B). Storer had testified regarding her department's

history with Kayli and Karli Bates. She testified that, when a safety plan was first implemented for the girls, Huge only wanted to have Karli placed with him. She stated that Huge did not want Kayli placed with him because she was a newborn and because, at that time, Huge did not believe that he was Kayli's father. Storer's testimony was relevant. It explained, as background information for the jury, why Kayli had lived a large portion of her life with relatives. And the testimony further helped establish Huge's motive and intent for harming Kayli by illustrating his lack of care and affection for the child.

{¶13} Huge next cites Tasha McGuire's testimony that he had not initially wanted to view Kayli's body after she had been pronounced dead, and that he had attempted to leave the hospital with Karli after being informed that a safety plan was being implemented for her. Again, this testimony was relevant towards establishing Huge's motive and intent for harming Kayli by evincing his lack of interest in Kayli and much stronger affection for Karli.

{¶14} Huge next argues that Tracy Armstrong's testimony contained numerous instances of improper other-acts testimony. Armstrong, a cousin of Kayli's mother Julie Bates, testified that she had shared custody of Kayli from August of 2009 until February of 2010 with Dani Bates, Julie Bates' step-mother. Armstrong testified that Kayli had been removed from her care after she questioned Huge and Bates about marks that she had found on Kayli's head after a visit with her parents. Armstrong additionally testified that Huge had a loving relationship with Karli, but that his relationship with Kayli was nonexistent. We have already held that testimony concerning Huge's lack of affection towards Kayli was relevant and admissible. We further hold that Armstrong's testimony regarding the marks that

6

she had found on Kayli was properly admitted. Testimony concerning prior injuries to Kayli established that the injuries she had suffered upon death were not an accident. Huge further argues that Armstrong was improperly allowed to read an exchange of text messages between Huge and her in which she had asked Huge for permission to see Kayli. We cannot conclude that the trial court abused its discretion in admitting this testimony.

{¶15} We next consider the testimony of Dani Bates. Huge cites numerous instances of allegedly improper testimony from Bates, including her testimony that Huge had treated Kayli differently because he did not initially believe that he was the child's father; that Huge failed to visit Kayli when he dropped off supplies for her; that Huge at times refused to supply formula for Kayli and instructed Bates to feed her "cow's milk"; and that Huge had refused to pay for a funeral for Kayli. Again, this testimony established Huge's lack of interest in Kayli and helped explain his motive for and intent in harming her. It was not offered to show that Huge was a bad person and establish action in conformity therewith.

{¶16} Last, Huge argues that Malcolm Moore, a friend of Huge's mother, had been improperly allowed to testify that he had seen several bruises and wounds on Kayli when Huge's mother had been babysitting the child at his house. This testimony was relevant and properly admitted. It established that the injuries inflicted upon Kayli that resulted in her death had not been an isolated incident and were not the result of an accident.

{¶17} The trial court did not abuse its discretion in admitting the testimony cited by Huge. The first assignment of error is accordingly overruled.

### *Prosecutorial Misconduct*

{¶18}   In his second assignment of error, Huge argues that the trial court erred in permitting repeated instances of prejudicial prosecutorial misconduct.   A prosecutor's comments or behavior will only serve as grounds for error if it deprived the defendant of a fair trial.   To do so, the prosecutor's actions must have been improper and must have prejudiced the defendant's substantial rights.   *State v. Smith*, 130 Ohio App.3d 360, 366, 720 N.E.2d 149 (1st Dist. 1998).

{¶19}   Huge first argues that the prosecutor failed to provide notice of the intent to introduce evidence of other bad acts.   The record does not support this allegation.   After considering Huge's objection below on this ground, the trial court specifically found that the prosecutor had fully complied with the relevant law requiring a prosecutor to provide notice of an intention to use evidence.   The record supports the trial court's ruling.   Huge next argues that, during opening statements, the prosecutor attempted to reference a prior instance where Huge had choked Julie Bates.   The trial court sustained Huge's objection and prohibited the prosecutor from referring to this prior incident.   Error cannot be found on appeal based on an objection that was sustained at trial.   *Bowden v. Annenberg*, 1st Dist. No. C-040499, 2005-Ohio-6515, ¶ 19.   Huge further argues that the prosecutor committed misconduct by repeatedly introducing irrelevant and improper instances of other-acts evidence.   But in our resolution of the first assignment of error, we determined that this evidence had been properly admitted.

{¶20}   Last, Huge argues that the prosecutor committed misconduct during closing argument. A prosecutor's comments during closing argument must be viewed in light of the entire closing argument, rather than in isolation.   *State v. Kelly*, 1st

Dist. No. C-010639, 2002-Ohio-6246, ¶ 22. A prosecutor is entitled to a particular degree of latitude in closing remarks. *State v. Smith*, 14 Ohio St.3d 13, 470 N.E.2d 883 (1984).

{¶21} Huge first argues that the prosecutor referred to evidence not in the record during closing argument. He specifically takes issue with the prosecutor's characterization of the coroner's testimony regarding timing of death. Following our review of the record, we find that the prosecutor's comments regarding timing of death were fair commentary based on the evidence presented.

{¶22} Huge next contends that the prosecutor had presented a theory of the case that was not supported by the record. During closing argument, the prosecutor presented the jury with a hypothetical scenario of how Kayli could have died. In the hypothetical, the prosecutor surmised that Huge had become angry over Kayli whining and vomiting after finishing a bottle, and that he had harmed her because he had never wanted her. This commentary was not improper and was a fair inference based on the evidence presented at trial. Numerous witnesses had testified that Huge demonstrated a lack of affection towards Kayli, and had a much stronger bond with his older daughter Karli.

{¶23} Last, Huge argues that during closing argument the prosecutor attempted to inflame the passions of the jury by demeaning the defense's argument that Kayli's death had been accidental and had been caused by her sister Karli's roughhousing. The prosecutor stated in closing argument that "what kind of person would throw his two-year-old, three-month daughter under the bus to save his soul? That man right there." While these comments were strong, we cannot find that they were improper. Both Drs. Keeshin and Shapiro had testified that a two-year-old

child could not have caused the injuries that Kayli had sustained. The prosecutor's comments insinuating that Huge's defense was implausible were supported by the record. The second assignment of error is overruled.

{¶24} In his fourth assignment of error, Huge argues that the trial court erred in failing to grant his motion for a mistrial based on the prosecutor's improper and prejudicial remarks during closing argument. We have determined that the prosecutor's remarks during closing argument were not improper. Consequently, the trial court did not err in failing to grant a mistrial on these grounds. The fourth assignment of error is overruled.

### *Authentication of Text Messages*

{¶25} In his third assignment of error, Huge contends that the trial court erred in allowing a state's witness to read from text messages that had not been properly authenticated.

{¶26} During her testimony, Tracy Armstrong discussed a series of text messages that had been exchanged between Huge and her. Huge argues that these messages had not been properly authenticated by a telephone company representative as required by Evid.R. 901. Huge contends that without such authentication, there was no assurance that he had actually sent the message that Armstrong alleged she had received from him.

{¶27} Evid.R. 901 concerns authentication and identification of documents. It provides that "[t]he requirement of authentication * * * as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). The burden for authentication under this rule is not great, and only requires a prima facie showing.

*State v. Wright*, 1st Dist. No. C-080437, 2009-Ohio-5474, ¶ 47. The state may meet its burden by demonstrating a reasonable likelihood that the evidence is authentic. *State v. Blake*, 2012-Ohio-3124, 974 N.E.2d 730, ¶ 28 (12th Dist.).

{¶28} During her testimony, Armstrong identified two exhibits that were copies of text messages that she had sent to Huge. In these messages, she had begged to be allowed to see Kayli. Armstrong testified that she had normally communicated with Huge by sending text messages. Armstrong additionally identified another exhibit as a text message that she had received from Huge, and she read that message aloud to the jury.

{¶29} We hold that Armstrong's testimony that texting was her normal means of communication with Huge, and that the text message had been sent from Huge and saved to her phone, was sufficient to authenticate the message under Evid.R. 901. *See State v. Jaros*, 6th Dist. No. L-10-1101, 2011-Ohio-5037, ¶ 21 (the victim's testimony identifying the text messages on her cellular phone as being sent from the defendant's email address, which she had frequently received emails from and was familiar with, was sufficient to authenticate the text messages under Evid.R. 901). Huge's argument alleging a lack of proof that he had actually sent the message concerns the weight of the evidence, rather than its authenticity.

{¶30} The text messages were properly authenticated, and the trial court did not err in allowing Armstrong to read from them. The third assignment of error is overruled.

### *Sufficiency and Weight of the Evidence*

{¶31} In his fifth and sixth assignments of error, Huge argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶32} A conviction is supported by sufficient evidence when, after viewing all evidence and reasonable inferences in the light most favorable to the prosecution, a rational trier fact could find all the elements of the offense proven beyond a reasonable doubt. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Huge was convicted of murder under R.C. 2903.02(B). This statute provides that "[n]o person shall knowingly cause the death of another as the proximate result of the offender's committing or attempting to commit an offense of violence." In this case, Huge was convicted of knowingly causing the death of his daughter while committing or attempting to commit the offense of felonious assault. Huge was also convicted of child endangering under R.C. 2919.22(B), which provides that no person shall torture or cruelly abuse a child.

{¶33} During trial, paramedic Matthew Moore testified that, upon responding to Huge's emergency call, he found Huge holding a lifeless Kayli, whom he believed to have been already deceased at that point. Drs. Keeshin and Shapiro testified regarding the numerous bruises and injuries found on Kayli at the time of her death. Dr. Keeshin testified that the locations of Kayli's injuries were consistent with injuries that had been inflicted, rather than injuries that had been caused accidentally. Dr. Keeshin further testified that Kayli's injuries could have been caused by strangulation or smothering. This was consistent with the coroner's

testimony that Kayli's cause of death was asphyxia with findings of smothering and neck compression.

{¶34} The jury was also presented with evidence that Kayli had suffered injury and had been abused prior to her death. Tracy Armstrong testified that Huge had removed Kayli from her care after she questioned him regarding marks on Kayli's head that were incurred during a visit with Huge and Julie Bates. And Malcolm Moore testified that, not long before her death, he had observed numerous bruises and wounds on Kayli's head, chest, and ear. Further, the state had presented ample evidence to establish motive and intent. Numerous witnesses had testified that Huge demonstrated a lack of affection and interest towards Kayli.

{¶35} Following our review of the record, we conclude that Huge's convictions for murder and child endangering were supported by sufficient evidence.

{¶36} We now consider the weight of the evidence. When reviewing the manifest weight of the evidence, a court must review the record, weigh the evidence and all reasonable inferences, and determine whether, in convicting the defendant, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶37} Huge contends that the jury had disregarded alternative plausible scenarios that he had presented to explain Kayli's death. He contended that her death had resulted from a condition that she suffered in which she continually held her breath until she passed out; that Kayli had died from choking on her own vomit; and that Kayli had been accidentally killed by her rougher older sister Karli.

{¶38}  With respect to his theory that Kayli had died from holding her breath, Huge presented testimony from Glenn Warner, who worked in the field of computer data recovery.  Warner testified that he had examined two hard drives from Huge's computer and had found that a program on the computer had been used to open a filed titled breath-holdingspells.pdf.  Huge additionally presented testimony from his mother, Vivian Huge, that Kayli would hold her breath and pass out at least twice a day.   But the state had presented testimony from Drs. Shapiro and Keeshin that a child cannot die from holding his or her breath.  The doctors testified that, once a child passes out from breath holding, its body begins to breathe again.

{¶39}  In support of his theory that Kayli had died from choking on her own vomit, Huge presented the testimony of Mitchell Frey, an emergency medical technician who had responded to Huge's emergency call.  Frey testified that he had assisted in attempting to clear Kayli's airway in the ambulance, and that he had found some sort of vomit in her airway.  But deputy coroner Jennifer Schott had testified that, although a child could die from choking on its own vomit, she had found no aspirate in Kayli's lungs.  Dr. Shapiro likewise testified that, if a child were to choke on its vomit, the vomit would be seen in the child's lungs during an autopsy.

{¶40}  Several witnesses testified in support of Huge's contention that Karli's roughhousing had resulted in Kayli's death.  Vivian Huge provided testimony that Karli was a rambunctious child who at times was jealous of Kayli.  She told the jury about a specific incident in which Karli had pulled Kayli off of Vivian's lap, resulting in Kayli hitting the floor.  Troy Maddux testified that Huge was a customer of Maddux's auto body business, and that Huge had at times brought both Kayli and Karli to Maddux's office.   Maddux stated that Karli was big for her age,

rambunctious, and that he had nicknamed her "linebacker." He testified about an incident that he recalled in which Karli had run over to him, knocking Kayli out of the way because she was jealous of the younger sister. But both Drs. Shapiro and Keeshin testified that a rambunctious two-year-old could not have caused the injuries suffered by Kayli.

{¶41} We cannot conclude that the jury lost its way and created a manifest miscarriage of justice in finding Huge guilty of murder and child endangering. The jury was in the best position to judge the credibility of the witnesses. It was entitled find more credible the testimony offered by the medical professionals regarding Kayli's cause of death. In light of the extensive injuries found on Kayli's body, the jury did not err in rejecting Huge's alternate explanations of the cause of death.

{¶42} Huge's convictions were supported by both the sufficiency and the weight of the evidence. The fifth and sixth assignments of error are overruled.

### Allied Offenses of Similar Import

{¶43} In his seventh assignment of error, Huge argues that the trial court erred in failing to merge his convictions for murder and child endangering, which he contends are allied offenses of similar import.

{¶44} Under R.C. 2941.25, Ohio's multiple-count statute, a trial court may convict and sentence a defendant for two or more offenses that arose out of the same criminal transaction if the offenses (1) were not allied offenses of similar import, (2) were committed separately, or (3) were committed with a separate animus as to each offense. *State v. Bickerstaff*, 10 Ohio St.3d 62, 65-66, 461 N.E.2d 892 (1984); *see State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 51; *State v. Evans*, 1st Dist. No. C-100028, 2011-Ohio-2356, ¶ 6. The Ohio Supreme Court has

clarified that, when determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. *Johnson* at syllabus.

{¶45} In this case, the trial court properly sentenced Huge for both offenses because they were committed separately. The indictment alleged that Huge had committed the offense of murder on or about September 7, 2010. It further alleged that Huge had committed the offense of child endangering on an undetermined date on or before September 7, 2010. The evidence presented during trial demonstrated that Kayli had been the victim of child endangering prior to the date of her death. Deputy coroner Jennifer Schott had testified that the bruises on Kayli's body were of differing colors, indicating that each injury had not been inflicted at the same time. And both Tracy Armstrong and Malcolm Moore testified that they had observed injuries on Kayli prior to the date of her death.

{¶46} Because the offenses of murder and child endangering were committed separately, the trial court properly imposed separate sentences for each offense. The seventh assignment of error is overruled.

### *Cumulative Error*

{¶47} In his eighth assignment of error, Huge argues that the cumulative effect of the previously asserted assignments of error denied him the right to due process and a fair trial.

{¶48} We have reviewed Huge's assignments of error and have found them to be without merit. There is no cumulative error to be considered. The eighth assignment of error is overruled. The judgment of the trial court is, accordingly, affirmed.

**Judgment affirmed.**

**HILDEBRANDT** and **FISCHER, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.