**[Cite as *State v. Kitzilkaya*, 2023-Ohio-3989.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-230017 |
| | | C-230018 |
| Plaintiff-Appellee, | : | TRIAL NOS. C-22CRB-11837 |
| | | C-22CRB-17504 |
| vs. | : | |
| | | *O P I N I O N.* |
| ISMET KIZILKAYA, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: November 3, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**KINSLEY, Judge.**

{¶1}    Following a jury trial in the Hamilton County Municipal Court, defendant-appellant Ismet Kizilkaya was convicted of one count of domestic violence in violation of R.C. 2919.25(A) and one count of violating a protection order in violation of R.C. 2919.27(A), both misdemeanors of the first degree.  In his single assignment of error, Kizilkaya challenges the weight of the evidence supporting his convictions. For the reasons set forth below, we affirm Kizilkaya's convictions.

### Factual and Procedural History

{¶2}    Kizilkaya and the complaining witness, Fidan Ozlem Pulten, are both Turkish.  The two gave different explanations regarding the status of their relationship at the time of the incidents.  According to Pulten, she and Kizilkaya had been in an intimate relationship for approximately six-and-half years. They shared a one-bedroom apartment in Blue Ash, Ohio, and paid bills together.  On the other hand, according to Kizilkaya, the apartment was his alone and Pulten was only staying there because she had been "kicked out" of her previous residence.  He paid all the bills, and Pulten only helped pay rent occasionally.  Kizilkaya was in a relationship with Mine Tekkanarya, who lived in New Jersey.

{¶3}    The charges against Kizilkaya stem from two different incidents involving Putlen.

*Domestic Violence Incident*

{¶4}    On July 13, 2022, around midnight, Kizilkaya and Pulten got into an argument.  The two gave different accounts of how things unfolded that night. According to Pulten, the two began arguing because she received text messages for Kizilkaya's girlfriend, Mine, and confronted him about it.  The argument escalated and

Kizilkaya began yelling and cursing at her. In response, Pulten covered Kizilkaya's mouth with her hand. Pulten testified that after she placed her hand over Kizilkaya's mouth, he hit her in the left cheek, left ear, and right back. Following the altercation, she grabbed her phone, went into the hallway, and called 911.

{¶5} According to Kizilkaya, the argument ensued because he was leaving the apartment to go live with Mine in New Jersey. He testified that Pulten pushed him out of the apartment, locked the door, and threatened to call the police and say that he threatened her with a knife. After being put out, Kizilkaya testified that he went to the garage, got in his car, and left. He denied putting his hands on Pulten.

{¶6} Following the argument, the police were called, and Officer Peter Bronner responded. Bronner testified that the call was initially for an unknown person in trouble and that the details were vague due to the language barrier, as Pulten speaks Turkish. However, the call was later updated to indicate that a "boyfriend kicked a girlfriend out," and then again to an incident involving some form of physical struggle.

{¶7} Bronner arrived on the scene 13 minutes after midnight. Upon his arrival, he saw a silver Toyota Rav4 pulling out of the garage. He identified Kizilkaya as the driver at trial. Bronner observed red marks on Pulten while she was in the ambulance, including one on her shoulder and another behind her left ear.

{¶8} Kizilkaya left for New Jersey before the police could talk with him. Ultimately, he was charged with domestic violence in violation of R.C. 2919.25(A). He was arraigned in September 2022, and signed a temporary protection order stating that he would stay away from Pulten.

*Violation-of-a-Protection-Order Incident*

{¶9} On October 7, 2022, while sitting in the parking lot of Artemis Mediterranean Bistro, Kizilkaya pulled his car up next to Pulten's, in the opposite direction of her car. She could clearly see him because her window was down. Pulten testified that Kizilkaya said, "I will bring your end," which she took as a threat, and he drove away. Following this encounter, Pulten went inside the restaurant, but did not call the police until the next day.

{¶10} Kizilkaya's account of the incident differs. Kizilkaya testified that on this particular day he was doing Door Dash orders with his girlfriend, Mine. They received an order at a restaurant called Napa, which is near Artemis. After arriving to pick up the order, he cancelled the order because there was a delay. Later that day, Kizilkaya called the Montogomery Police dispatch. He testified that he was calling to see if there was a report made against him because he had seen Pulten while out. He told the police that he did not speak to or approach her. Dispatch let him know that no reports had been made.

{¶11} Ultimately, Kizilkaya was charged with violation of a protection order under R.C. 2919.27(A).

{¶12} The jury convicted Kizilkaya of both the domestic-violence and protection-order-violation charges. On the domestic violence charge, he was sentenced to 180 days, with credit for one day, and a $250 fine. For violation-of-a-protection order, he was sentenced to 180 days, with credit for 59 days, and a $250 fine.

{¶13} Kizilkaya timely appealed.

### Manifest Weight

{¶14} In his sole assignment of error, Kizilkaya argues that his convictions were against the manifest weight of the evidence.

{¶15} When reviewing a challenge to the manifest weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). Unlike our review of a sufficiency challenge, review of a manifest-weight challenge requires us to independently "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, ¶ 16, citing *Thompkins* at 397. However, we will reverse the trial court's decision to convict and grant a new trial only in " 'exceptional cases in which the evidence weighs heavily against the conviction.' " *State v. Sipple*, 1st Dist. Hamilton No. C-190462, 2021-Ohio-1319, ¶ 7, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

*Domestic Violence*

{¶16} Kizilkaya asserts that the evidence presented at trial of Pulten's version of events is not credible. Pulten testified that Kizilkaya hit her multiple times after she placed her hand over his mouth.[1] Bronner testified that he observed red marks on Pulten in the areas she said she was struck. Although Kizilkaya's testimony differs, the jury heard all the testimony and found Kizilkaya guilty. The jury found the testimony of Pulten, which was corroborated by Bronner's testimony, to be more credible than the testimony presented by Kizilkaya. After reviewing the entire record, we find nothing to suggest that the jury, in its evaluation of the evidence, clearly lost its way and created a manifest miscarriage of justice that would require us to reverse the

---

[1] Kizilkaya did not raise a self-defense claim.

conviction and order a new trial. *See Thompkins* at 387. Therefore, we overrule this assignment of error as to the domestic-violence charge.

*Violation of a Protection Order*

**{¶17}** As he does with the domestic-violence conviction, Kizilkaya asserts that Pulten's account of what happened on October 7 is not credible. Pulten testified that she was in her car in the Artemis restaurant parking lot when Kizilkaya drove up and threatened her. She testified that she clearly saw his face because her window was down. Kizilkaya's testimony put him in the area where the incident took place. In the call Kizilkaya made to Montgomery Police, he stated that he and Pulten saw each other. This testimony lends credence to Pulten's version of events. Moreover, there is nothing in the record that supports Kizilkaya's assertion that Pulten's testimony was not credible. After reviewing the entire record, weighing the evidence, considering the credibility of witnesses, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice. *Id.* Therefore, we overrule Kizilkaya's assignment of error as to the violation-of-a-protection-order charge.

### *Conclusion*

**{¶18}** For the reasons set forth in this opinion, we affirm the judgments of the trial court.

Judgments affirmed.

**ZAYAS, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.