[Cite as *State v. Perkins*, 2025-Ohio-1576.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240428 |
| | | TRIAL NO. 24/CRB/3453 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| SOPHIA PERKINS, | : | |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, and the briefs.

The judgment of the trial court is affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 5/2/2025 per order of the court.**

**By:**_____
        **Administrative Judge**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                          :          APPEAL NO.   C-240428
                                                   TRIAL NO.    24/CRB/3453
      Plaintiff-Appellee,          :

  vs.                                   :
                                                            *O P I N I O N*
SOPHIA PERKINS,                         :

      Defendant-Appellant.         :


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 2, 2025

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Amber Daniel Jeffrey*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffmann*, Assistant Public Defender, for Defendant-Appellant.

**NESTOR, Judge.**

**{¶1}** After receiving numerous text messages, all insulting and some threatening, from unknown phone numbers, Dominique Lee contacted the police to report that he believed defendant-appellant Sophia Perkins was harassing him. Following a bench trial, the trial court found Ms. Perkins guilty and sentenced her to one year of probation, including a ten-week stay-away order and a $100 fine. We conclude that the text messages were properly authenticated. As a result (1) her conviction was supported by sufficient evidence, and (2) her conviction was not against the manifest weight of the evidence. Accordingly, we overrule her two assignments of error and affirm the trial court's judgment.

## I. *Factual and Procedural History*

**{¶2}** After attending the same high school and knowing each other for years, Mr. Lee and Ms. Perkins had two children together. Following the birth of both children, the relationship soured, leading to the events that are the subject of this litigation.

**{¶3}** On February 29, 2024, Mr. Lee stopped on his way to work to meet his girlfriend for a dinner date. As he arrived, he observed Ms. Perkins at the same restaurant, and they made eye contact. Avoiding any interaction with Ms. Perkins, Mr. Lee continued into the restaurant and ate with his girlfriend. On Mr. Lee's departure, events took an unfortunate turn.

**{¶4}** Once outside, a woman claiming to be a caseworker approached him with his children. Mr. Lee contends that this woman asked him if he remembered his children, to which he responded that he did, and then he got in his car and went to work. On the other hand, Ms. Perkins claimed that as she watched the interaction, Mr. Lee pushed one of their daughters.

{¶5} The next day, Mr. Lee received text messages from a number he did not recognize. The text read in part, "[a]nd for [you] to push [one of our daughters] out your way when she hugged [you] – saying [you] ain't got time... that was foul." This message was followed by another stating, "And how you drunk already and picking up another drink before work?! Pitiful. Seek help." Mr. Lee kept both text messages, but did not respond, and he immediately blocked the number.

{¶6} Minutes later, he received another text message from a different number stating, "[A]nd we [know] [you] ain't send [your] sick sister down there to do s*** . . . wtf was she [going to] do?. . . Sick. Sad. . ." Mr. Lee explained that after he saw Ms. Perkins and their children outside of the restaurant, he reached out to his sister to intervene with Ms. Perkins. He then blocked this number as well.

{¶7} Almost an hour later, Mr. Lee received two more messages, from yet another unknown number. The first message stated, "AND IN CASE [YOU] LIED TO MS R. WE [ARE GOING TO] MAKE SURE SHE KNOWS THE REAL [YOU]! . . . HOPE [YOU] AINT MAKIN NO MORE BABIES SINCE [YOU] CANT AFFORD THEM! NOT JUST [FINANCIALLY] BUT IN ALL WAYS! BUM!" The second message stated, "AND [YOU] CAN CHANGE [YOUR] NUMBER WE [WILL] STILL GET IT AND WE [WILL] ALWAYS KNOW WHERE TO FIND [YOU]." To these messages, Mr. Lee responded with laughing emojis and then blocked the number. He confirmed both that the "Ms. R" referenced was his girlfriend and that he has another child with a woman other than Ms. Perkins.

{¶8} Mr. Lee testified that the references to his girlfriend and the sender explaining that they would still be able to find him made him upset and worried about his safety. Unfortunately, the unwanted texts continued.

{¶9} The next day, Mr. Lee received another text, again from an unknown

number. This text affirmatively stated, "Also, [you] are [going to] get [your] a** beat for pushing my babies away from [you]. So call who [you] need to call. Watch [your] back cause we know where [you] work, live and where ol' girl be. And we know to find [you] at any local bars also or your local [liquor] [store]." Mr. Lee explained that these texts made him upset and angry because he had not done anything to Ms. Perkins, who he believed was the sender, and he had not spoken to her in over a year. Following his same pattern, Mr. Lee blocked this number as well.

{¶10} Then came the final text, from another unknown number, further berating him and referring to the event at the restaurant. Mr. Lee then went to the Cincinnati police to report that he was being harassed. Based on (1) the content of the texts, (2) the repeated statements about him both pushing her daughter and being a drunk, (3) the reference to "my babies" in the fourth message, and (4) the statements about his sister, Mr. Lee believed that these texts were coming from Ms. Perkins.

{¶11} As Mr. Lee returned home from the police department, Ms. Perkins called him mainly to ask if he had called the police on her, but she also accused him again of pushing their daughter and threatened to get someone to beat him up before she got off the phone. Mr. Lee recorded this phone call and returned to the police station to confirm that he knew the caller was Ms. Perkins because he knew her voice.

{¶12} A Cincinnati Police patrol officer then contacted Ms. Perkins and she immediately began stating that Mr. Lee should never have pushed their daughter and called him a drunk. The officer explained that the reason the police reached out to her was because of the "hundreds" of text messages Mr. Lee had been receiving from random phone numbers and Ms. Perkins responded, "[I]t may be ten [messages], if that." The officer testified at trial that Ms. Perkins confirmed the details of the various texts.

**{¶13}** Following this call between the police and Ms. Perkins, and her statements while on the phone, Ms. Perkins was charged with telecommunications harassment in violation of R.C. 2917.21. After a bench trial, the court found Ms. Perkins guilty and sentenced her to probation, including an order to stay away from Mr. Lee. The court also imposed a $100 fine.

**{¶14}** Ms. Perkins now appeals, asserting two assignments of error. She first argues that the text message conversations were not properly authenticated. She argues under her second assignment of error both that her conviction was not supported by sufficient evidence and was against the manifest-weight of the evidence.

## II. Analysis

### A. First Assignment of Error

**{¶15}** As Ms. Perkins admits, there was no objection to the admission of the five text messages at trial based on lack of authentication. "When parties fail to raise an objection at trial, they forfeit all but plain error" under Crim.R. 52. *State v. Saleem*, 2024-Ohio-3162, ¶ 27 (1st Dist.), citing *State v. Robertson*, 2023-Ohio-2602, ¶ 16 (1st Dist.). A party demonstrates plain error by showing "(1) a 'deviation from a legal rule,' (2) that was 'plain, in that there must be an obvious defect in the trial proceedings,' and (3) that the error 'affected substantial rights, meaning that the trial court's error must have affected the outcome of the trial.'" *Id.*, quoting *State v. Browner*, 2024-Ohio-1547, ¶ 8 (1st Dist.), quoting *State v. Garrett*, 2022-Ohio-4218, ¶ 63.

**{¶16}** Ms. Perkins's plain error argument rests in her belief that the State failed to set forth a prima facie case supporting the finding of authentication of the five text messages. Under Evid.R. 901(A), "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent

claims." "Authentication is 'a very low threshold, which is less demanding than the preponderance of the evidence.'" *State* v. *Patterson*, 2018-Ohio-3348, ¶ 13 (1st Dist.), quoting *State v. White*, 2004-Ohio-6005, ¶ 61 (4th Dist.). Circumstantial evidence can be used for authentication. *Id.*, citing *State v. Paster*, 2014-Ohio-3231, ¶ 32 (8th Dist.). This threshold does not require conclusive proof of authenticity, but only a "reasonable likelihood" that the evidence is what it purports to be. *State v. Thyot*, 2018-Ohio-644, ¶ 21 (1st Dist.), citing *State v. Hoffmeyer*, 2014-Ohio-3578, ¶ 18 (9th Dist.); *State v. Freeze*, 2012-Ohio-5840, ¶ 65 (12th Dist.); *see Paster* at ¶ 32, citing *State v. Pruitt*, 2012-Ohio-5418, ¶ 11 (8th Dist.), quoting *State v. Teague*, 2009-Ohio-129 (8th Dist.) (explaining that both circumstantial and direct evidence may be used to show authenticity, and conclusive proof is not needed).

**{¶17}** In this case, Mr. Lee received five text messages, all from unknown phone numbers. These messages, while insulting and threatening, followed certain themes that made Mr. Lee believe the sender was Ms. Perkins.

**{¶18}** First, two of the messages refer to Mr. Lee allegedly pushing their child away outside of the restaurant. Ms. Perkins was present when the "social worker" approached Mr. Lee and she has maintained that he pushed their child away. She continued to angrily tell this version of the events to the police. Also, in a recording that Mr. Lee took of a phone call with Ms. Perkins, she screamed at him for pushing their daughter away outside of the restaurant.

**{¶19}** Next, Mr. Lee believes the second message is from Ms. Perkins because the author referred to Mr. Lee's sister going to see Ms. Perkins after he had told her what happened. He believes that only she would know about his sister visiting her, the facts surrounding his sister's sickness, and what he allegedly said about never caring about his sister in the first place. Further, in the fourth text message the author

7

referred to the children as "my babies."

{¶20} Moreover, three of text messages referred to Mr. Lee being an alcoholic or a "drunk," which was a point of emphasis for Ms. Perkins. As soon as the phone call started with the police, she complained about Mr. Perkins drinking.

{¶21} Finally, the police witness testified that he called one of the phone numbers and got in contact with Ms. Perkins. Now, there is conflicting evidence presented by the parties on which party called the other, but during the phone call Ms. Perkins admitted to knowing about the texts. This testimony further reinforces the proposition that Ms. Perkins was the sender because she admitted knowledge of the texts. Further, the police officer testified that Ms. Perkins admitted to the details of the texts as related to him by Mr. Lee.

{¶22} Moreover, we have previously held that a victim's testimony that texting was her normal means of communication with the defendant and that the text message was sent from the defendant was sufficient to authenticate the text message. *State v. Huge*, 2013-Ohio-2160, ¶ 29 (1st Dist.). Along with our own holdings, the Eighth District held that the State met the low threshold of Evid.R. 901(A) when the victim authenticated the messages by testifying regarding the details of the messages that made it clear that the messages were from a particular person. *State v. Hamrick*, 2024-Ohio-1364, ¶ 29 (8th Dist.). The victim's testimony in this case, along with the confirmation from the investigating officer, was sufficient to authenticate the texts.

{¶23} Still, Ms. Perkins argues that because others were present in the restaurant and others knew the facts found in the text messages, the texts were not properly authenticated. As the trial court observed, there was ample evidence confirming the authenticity of the texts. The circumstantial evidence presented at trial established at the very least a reasonable likelihood that the text messages were from

Ms. Perkins. Thus, the State met the low threshold of Evid.R. 901(A), and Ms. Perkins failed to show any deviation from the rule. The trial court properly admitted the text messages and we find no plain error.

**{¶24}** Accordingly, we overrule her first assignment of error.

### B. Second Assignment of Error

### i. Sufficiency

**{¶25}** "To determine whether a conviction is supported by sufficient evidence, we inquire 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Trentman*, 2024-Ohio-5661, ¶ 20 (1st Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Under R.C. 2917.21(1), [n]o person shall knowingly make or cause to be made a telecommunication, or knowingly permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person.

**{¶26}** A key inquiry of telecommunications harassment is "'whether the *purpose* of the person who made the communication was to abuse, threaten, or harass the person called.'" (Emphasis added.) *In re C.W.*, 2019-Ohio-5262, ¶ 14 (1st Dist.), quoting *State v. Kronenberg*, 2015-Ohio-1020, ¶ 15 (8th Dist.), citing *State v. Bonifas*, 91 Ohio App.3d 208, 211-212 (3d Dist. 1993). "'In the absence of direct evidence, a defendant's purpose or intent to threaten, harass, or abuse may be established by the facts and circumstances surrounding the communication.'" *Id.*, quoting *City of Hamilton v. Combs*, 2019-Ohio-190, ¶ 20 (12th Dist.), citing *Kronenberg* at ¶ 15. A defendant acts with such purpose "'when it is his specific intention to cause a certain result, or, when the gist of his offense is a prohibition against conduct of a certain

nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.'" *Id.*, quoting R.C. 2901.22(A). Thus, "the statute creates a specific-intent crime which requires the state to prove that the defendant's specific purpose is to harass." *Id.* at ¶ 15. The State's burden is not met merely "by establishing only that the defendant knew or should have known that her conduct would *probably* cause harassment" but instead the legislature has created a "substantial burden to limit the statute's scope to criminal conduct, not the expression of offensive speech." (Emphasis in original.) *Id.*, quoting *State v. Ellison*, 2008-Ohio-5282, ¶ 15 (1st Dist.).

**{¶27}** Harassment has been understood as "'words, conduct, or action (usually repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress in the person and serves no legitimate purpose.'" (Cleaned up.) *Id.* at ¶ 16, quoting *Ellison* at ¶ 14. In this case, the State had the burden of establishing beyond a reasonable doubt that Ms. Perkins's specific purpose in sending the texts was to harass Mr. Lee. The record, consisting of testimony from both Mr. Lee and a police officer, provides ample evidence that Ms. Perkins acted with the purpose to harass Mr. Lee.

**{¶28}** Still, Ms. Perkins argues that her conviction was not supported by sufficient evidence. Nonetheless, viewing all the evidence, i.e., the five text messages, her phone calls with both Mr. Lee and the police, and the testimony before the trial court, through a lens most favorable to the State, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Therefore, her conviction is supported by sufficient evidence.

### ii. Manifest Weight

**{¶29}** "A manifest-weight review requires this court to sit as a 'thirteenth-

juror.'" *State v. Jackson*, 2024-Ohio-2728, ¶ 9 (1st Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 388 (1997). "We review the record, consider witness credibility, and determine if the 'trier of fact clearly lost its way and created a manifest miscarriage of justice.'" *Id.*, quoting *State v. Powell*, 2020-Ohio-4283, ¶ 16 (1st Dist.), citing *Thompkins* at 387. "[W]e will reverse the trial court's decision to convict and grant a new trial only in "'exceptional cases in which the evidence weighs heavily against the conviction."'" *State v. Kizilkaya*, 2023-Ohio-3989, ¶ 15 (1st Dist.), quoting *State v. Sipple*, 2021-Ohio-1319, ¶ 7, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

**{¶30}** In this case, after viewing all the evidence, we will not reverse the trial court's decision. Mr. Lee credibly testified that the texts were both threatening and harassing. One of the texts couples a direct threat of violence to a warning to "watch your back." The evidence does not weigh heavily against Ms. Perkins's conviction, and therefore, it is not against the manifest weight of the evidence. Accordingly, her second assignment of error is overruled.

### *III.    Conclusion*

**{¶31}** Based on the foregoing, we overrule both of Ms. Perkins's assignments of error and affirm the judgment of the trial court.

Judgment accordingly.

**CROUSE, P.J.,** and **MOORE, J.,** concur.