[Cite as *State v. Jones*, 2025-Ohio-3252.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240533 |
| | | TRIAL NO. B-2204213 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| TERRENCE JONES, | : | |
| Defendant-Appellant. | : | |


This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 9/10/2025 per order of the court.**


**By:**_____
          **Administrative Judge**

[Cite as *State v. Jones*, 2025-Ohio-3252.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240533 |
| | | TRIAL NO. B-2204213 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| TERRENCE JONES, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 10, 2025


*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman, Jr.,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Law Office of Michele L. Berry, LLC,* and *Michele L. Berry*, for Defendant-Appellant.

**NESTOR, Judge.**

**{¶1}** Following the report of a robbery at a Cincinnati United Dairy Farmers ("UDF"), police found and arrested defendant-appellant Terrence Jones. After police found evidence of the crime near Jones and on his person, he was charged with robbery and later convicted, receiving an eight-to-12 year prison sentence. He now appeals, asserting that the trial court erroneously admitted statements, and that the verdict was against the manifest weight of the evidence. Because the admission of the disputed statements was not plain error, and credible evidence supported the conviction, we overrule both assignments of error and affirm the judgment of the trial court.

## I. Factual and Procedural History

**{¶2}** On August 30, 2022, Joseph Yocum, a manager at UDF, heard from an employee that Jones was stealing goods from the store and shoving them into his pants. Yocum confronted Jones as he moved towards the exit. Yocum testified that he saw "a bunch of stuff sticking out of [Jones's] pants." Yocum also testified that this was not his first encounter with Jones.

**{¶3}** As Yocum ordered Jones to remove the items from his pants, Jones responded, "No," and pulled out a "pocket-knife." Yocum described this knife as silver in color and later testified that the knife found by police matched the knife Jones had on the day of the robbery. Yocum also testified that he observed Jones with this knife for approximately six minutes.

**{¶4}** Yocum followed Jones from a distance, while on the phone with the 911 operator, until Jones exited from the UDF property. Yocum then watched Jones cross Galbraith Road and walk along a fenced school property across the street. Soon thereafter, Cincinnati police officers arrived at Hartwell Elementary School, near the

UDF, and found Jones. The police officers immediately noticed what seemed to be the goods reported by Yocum as stolen sticking out of the legs of Jones's pants. As the police officers searched Jones, they confirmed that the goods on his person were those stolen from the UDF. The officers then asked Jones where the knife was, and he responded that he did not use one. Another officer then shouted from the school that he found the knife allegedly used by Jones. This knife was in the grass, near a fence on the school property.

{¶5} As the police investigated, their body-worn cameras ("BWC") were activated. When Officer Brooks went to her cruiser to retrieve a container to place the knife in, she and other officers began to chat about past run-ins with Jones. Officer Brooks explained that she believed it was Jones who robbed a nearby CVS and that she had done "at least three reports" on Jones. She then called in over the radio that she believed it was Jones who stole from CVS and asked if past surveillance video could be recovered to confirm it was him.

{¶6} Officer Brooks then approached another officer and said again that Jones had "tore up CVS" previously. The officer responded that Jones had previously stole from a nearby Sunoco gas station "all the time" and that he had been arrested multiple times. Officer Brooks stated that Jones was going to jail for robbery because he had a knife and the other officer responded, "[A]nd he's done it before." Officer Brooks then said to the officers that she had seen Jones on video "way too many times" in past thefts in the area. The entirety of these conversations was captured on Officer Brooks's BWC.

{¶7} At trial, the State presented Yocum with a picture of the knife recovered by officers near the school and he responded, "[T]hat's the knife that was pulled on me." However, Jones argued that Yocum's testimony contradicted his previous

4

description of the knife. Yocum described the knife as a silver "pocket-knife, a little metal blade" around "three inches" long. During Officer Brooks's cross-examination, defense counsel asked her to use a ruler to measure the knife, and she stated that it was eight inches long. On redirect, the State asked Officer Brooks how long the *blade* of the knife was, to which she responded, "[T]hree inches," matching Yocum's previous description.

{¶8} Jones's counsel requested that the BWC statements referencing the officers' past experiences with Jones be muted when played at trial. The video was muted at trial. The court also agreed that the jury should not have access to the muted portions of the BWC video during deliberations. However, the jury inadvertently received the unredacted version of Officer Brooks's BWC video, consisting of approximately 20 minutes of footage. The jury deliberated for less than an hour before returning a guilty verdict for second-degree felony robbery in violation of R.C. 2911.02(A)(1). Jones received an aggregate sentence of eight to 12 years in the department of corrections. He now appeals asserting two assignments of error.

## II. Analysis

### A. First Assignment of Error

{¶9} In his first assignment of error, Jones asserts that the trial court erroneously admitted prejudicial, inadmissible statements by the police officers that they recognized him from multiple other store thefts in the same neighborhood. These statements were on the unredacted BWC video. Evid.R. 404(B)(1) provides that "[e]vidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, this general rule is subject to a non-exhaustive list of exceptions. Under Evid.R. 404(B)(2), "other-acts evidence may be admitted for the

purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *State v. Roberts*, 2024-Ohio-1604, ¶ 66 (1st Dist.). First, courts "must require the proponent of the evidence to identify a specific purpose from those enumerated in Evid.R. 404(B) for which the evidence is being admitted and then assess the relevance of the proffered evidence to that purpose." *Id.* at ¶ 67, citing *State v. Hartman*, 2020-Ohio-4440, ¶ 26. Errors at this first step are reviewed de novo. *Id.*, citing *Hartman* at ¶ 22.

**{¶10}** Here, it is unclear whether the jury received the redacted version of the BWC footage in addition to the unredacted version. Regardless, we do not agree that their receipt of the unredacted BWC footage warrants reversal. Of note, the jury deliberated for under an hour and the unredacted footage was over 20 minutes long. Given those temporal parameters, it is speculative that the jury even considered the unredacted footage. Even if they did, we are not convinced that the conversations between the officers, in light of the other evidence, formed the basis for the jury's guilty finding.

**{¶11}** Furthermore, defense counsel did not preserve an Evid.R. 404(B)(1) objection at trial. Here, before the jury went into deliberations, defense counsel requested that certain parts of the BWC footage be muted for the jury and the trial court agreed with said process. The jury then deliberated and returned a verdict in under one hour. Defense counsel did not cite Evid.R. 404(B)(1) when the exhibit was submitted to the jury for deliberation. As broadly recognized in Ohio courts, when defense counsel fails to object to challenged statements at trial, our review of the admission of those statements is limited to plain-error review. *State v. Tibbetts*, 92 Ohio St.3d 146, 157 (2001); *see State v. Johnson*, 88 Ohio St.3d 95, 110-111 (2000) (explaining that because appellant failed to object to the admissibility of certain

testimony at trial, he waived all but plain error with respect to the testimony).

**{¶12}** Jones does not present a plain-error argument to this court. This court consistently holds that we "need not analyze plain error when appellant has failed to make a plain[] error argument." *Burd v. Artis*, 2025-Ohio-625, ¶ 11 (1st Dist.), quoting *Marrs v. Mickel*, 2023-Ohio-4528, ¶ 15 (8th Dist.). However, even assuming a plain-error argument were presented, it would fail. The Ohio Supreme Court has repeatedly outlined our plain-error standard of review. "An alleged error is plain error only if the error is 'obvious,' [] and 'but for the error, the outcome of the trial would have been otherwise.'" *State v. Hale*, 119 Ohio St.3d 118, 126 (2008), quoting *State v. Sanders*, 2001-Ohio-189; *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph two of the syllabus. No plain error occurred here. The inadvertent exposure of the unredacted BWC footage, if it was in fact reviewed, may have been erroneous, but it would not have changed the outcome of the trial in light of the other evidence.

**{¶13}** The record overwhelmingly supports Jones's conviction. First, the eyewitness testimony from Yocum supports that Jones committed the robbery with the knife that officers found. Yocum testified that Jones pulled out a silver knife and he looked at this knife for approximately six minutes as Jones held it. Yocum testified that the knife the officers found matched the one Jones pulled on him at the UDF. He affirmatively stated, "[T]hat's the knife that was pulled out on me." Any dispute about Yocum's description of the knife being inconsistent was cleared up by Officer Brooks's testimony. On cross-examination and redirect examination, Officer Brooks explained that the knife was eight inches long in its entirety, but the blade was around three inches, as Yocum described in the 911 call.

**{¶14}** Furthermore, the other evidence strongly supports Jones's culpability for the robbery. The knife was found across the street from UDF, near the property

where officers found Jones. In addition, there is no dispute that Jones stole the goods from UDF. As soon as the officers located Jones, they quickly found that he had the stolen goods in his pants, just as Yocum had reported.

**{¶15}** In sum, the inadvertent exposure of the statements in the BWC footage, while prejudicial, was not plain error in light of the other evidence in the record. Even without the officer's BWC statements, there is strong evidence in support of Jones's conviction. Accordingly, we overrule his first assignment of error.

### B. Second Assignment of Error

**{¶16}** In his second assignment of error, Jones asserts that his conviction is against the manifest weight of the evidence. "A manifest-weight review requires this court to sit as a 'thirteenth[] juror.'" *State v. Perkins*, 2025-Ohio-1576, ¶ 29 (1st Dist.), quoting *State v. Jackson*, 2024-Ohio-2728, ¶ 9 (1st Dist.), citing *State v. Thompkins*, 78 Ohio St. 3d 380 (1997). "We review the record, consider witness credibility, and determine if the 'trier of fact clearly lost its way and created a manifest miscarriage of justice.'" *Id.*, quoting *State v. Powell*, 2020-Ohio-4283, ¶ 16 (1st Dist.), citing *Thompkins* at 387. "[W]e will reverse the trial court's decision to convict and grant a new trial only in '"exceptional cases in which the evidence weighs heavily against the conviction."'" *Id.*, quoting *State v. Kizilkaya*, 2023-Ohio-3989, ¶ 15 (1st Dist.), quoting *State v. Sipple*, 2021-Ohio-1319, ¶ 7, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

**{¶17}** Here we do not have such an exceptional case. Under R.C. 2911.02(A)(1), "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon,

brandish it, indicate that the offender possesses it, or use it." As defined in R.C. 2923.11, a knife is a deadly weapon because it is an instrument, device, or thing capable of inflicting death. For the reasons referenced above, the record strongly supports Jones's conviction for robbery and this is not a case in which the evidence weighs heavily against his conviction. Accordingly, Jones's robbery conviction was not against the manifest weight of the evidence.

### III.  Conclusion

{¶18}   Based on the foregoing, we overrule both of Jones's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**KINSLEY, P.J.,** and **ZAYAS, J.,** concur