[Cite as *State v. Powell*, 2020-Ohio-4283.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-190508 |
| | | TRIAL NO. C-19CRB-13372 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| CATHERINE POWELL, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: September 2, 2020

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Santen & Hughes* and *H. Louis Sirkin*, for Defendant-Appellant.

**MYERS, Judge.**

{¶1} Catherine Powell appeals her conviction for telecommunications harassment, in violation of R.C. 2917.21(B)(1). Because her conviction was supported by sufficient evidence and was not against the manifest weight of the evidence, we affirm the trial court's judgment.

*The Testimony at Trial*

{¶2} At trial, Ryan Haines testified that he and Powell had dated for a brief period and that they have a three-year-old child together. He described his current relationship with Powell as "nonexistent." When asked to describe his relationship with their child, Haines responded, "Same." Haines made it clear that he wanted no relationship with their child.

{¶3} Haines testified that on May 26, 2019, he received a text message from Powell that contained a video and stated:

It was your sons 3rd Birthday today you piece of shit. Here is a video to show you all the years you have missed out on. You wonder why * * * didn't hire you?? Look the person you are Ryan. You have a son who needs a father and you refuse to take responsibility. You manipulate the courts the police too hold innocent people accountable for your actions. Watch the video of your son grow up. I hope it makes you feel like a man[.]

{¶4} Haines testified that he felt harassed by the text. He said that Powell's mention of the courts and police referred to his having filed trespass and telecommunications-harassment charges against her in the past.

{**¶5**}  Haines testified that before their child was born, he had filed criminal trespass charges against Powell, for which she was found guilty.  Sometime after their child was born, Haines filed for a civil protection order against Powell, but the matter was dismissed.  Several months before this initial text from Powell, Haines had filed a telecommunications-harassment charge against Powell, which was later dismissed after a hearing.  According to Haines, Powell had preveiously been ordered by the court not to contact him.

{**¶6**}  After he received Powell's text message, Haines blocked Powell's number in his phone.  Within the next half hour, Haines received similar text messages from two phone numbers that he did not recognize.  Haines testified that he believed that the texts from those two phone numbers were also sent by Powell because they contained personal information.[1]

{**¶7**}  Then he received an email from Powell that stated:

Please unblock my number Ryan so we can talk about * * *.  Do you have his insurance card? Do I pick it up at [Haines's place of employment]?  You also had a change in address which is not reported, so that's a contempt of court.  Either we discuss some matters or go through the courts.

{**¶8**}  Haines contacted the police the following day.  According to Haines, the police told him to unblock Powell's number and to send her the following text:

Pursuant to this section of the Ohio Revised Code

---

[1] The trial court did not admit the text messages from the unknown phone numbers into evidence.

DO NOT CONTACT ME AGAIN. IF YOU ATTEMPT TO CONTACT ME AGAIN, I WILL FILE A REPORT WITH THE LOCAL LAW ENFORCEMENT AGENCY.

Haines included in his text message the language from R.C. 2917.21, the telecommunications-harassment statute. He concluded his text: "DO NOT CONTACT ME AT" and he listed his personal cell number and his work phone number.

{¶9} Powell replied with the following text message:

By court order of the law you Ryan Michael Haines Father of * * * are required too provide a medical card which was issued by Magistrate * * *[.] You also do not reside at * * * anymore which you failed too notify the courts which is also in our order. That failure to report change of residence and failure too provide our [child's] medical card will result in contempt of court a second time which will be filed with the Hamilton county Juvenile court. I will request the maximum punishment that the court allows and reimbursement for all medical bills resulting back too 2016 on * * *[.] Also it was Dismissed under rule 29 which means you cannot file harassment again because of double jeopardy. Let the authorities know that. Between the * * * and false harassment charges on me you are facing a civil lawsuit for vexatious litigator.

{¶10} Haines replied with a text stating, "Please stop trying to contact me." Powell replied to Haines with a text that stated:

You told the judge I could mail you letters regarding * * * which is in transcript from the hearing. What address should I mail the certified letter requesting our [child's] medical card that by court order you are required too provide?

{**¶11**} Without receiving a response, Powell sent another text: "Thank you. That's all I needed. I have the address and the courts will take it from there. Nice talking too you Ryan."

{**¶12**} Powell testified that her purpose in sending the first text to Haines was to show him the video she had made for their child's birthday in the hope that Haines might "want to say Happy Birthday." She denied that her attempts to communicate with Haines had been to harass him. When Powell was asked, "Really asking for [Haines] to be a part of your son's life," she responded, "Always."

{**¶13**} After closing arguments, the trial court said to Powell:

I understand what your point is or what you're saying that why you sent it to him, but it's clear from the tone and tenor that you sent that in violation of 2917.21. I'm going to make a finding of guilty on the telecommunications harassment.

I will tell you, Ms. Powell, it is clear from my part [sic] dealings with both of you, the father of that child has made it clear to you that he does not want to have contact with you. You cannot, for whatever purpose, be reaching out to him.

I will note we were in court four days prior to this [offense], and it was crystal, crystal clear in my mind, you can't guilt him into or continue to attempt to have contact with him thinking that you're

going to create a relationship. Juvenile court is set up to handle the obligations that we have here.

{¶14} After the trial court found Powell guilty of telecommunications harassment, it sentenced her to 180 days' incarceration, suspended the 180 days, and placed her on community control. The court further ordered Powell to have no contact with Haines.

*Weight and Sufficiency of the Evidence*

{¶15} In her sole assignment of error, Powell challenges the weight and sufficiency of the evidence supporting her conviction. She argues that her communications to Haines were not sent for the purpose of harassing him "but were an attempt for him to be a part of his son's life."

{¶16} In a challenge to the sufficiency of the evidence, the question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In reviewing a challenge to the weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 397, 678 N.E.2d 541 (1997). We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*

{¶17} Powell was charged with telecommunications harassment under R.C. 2917.21(B)(1), which prohibits a person from making a telecommunication "with purpose to abuse, threaten, or harass another person." "[F]or conduct to rise to the level of criminal harassment under this section of the statute, the accused must have

intended to alarm or to cause substantial emotional distress to the recipient, not just to annoy [him]." *State v. Ellison*, 178 Ohio App.3d 734, 2008-Ohio-5282, 900 N.E.2d 228, ¶ 14 (1st Dist.).

{¶18} Evidence of the defendant's intent to harass may be direct or indirect. *State v. Harshbarger*, 3d Dist. Auglaize No. 2-09-19, 2010-Ohio-4413, ¶ 19. In the absence of direct evidence, a defendant's purpose to threaten, harass, or abuse may be established by the facts and circumstances surrounding the communication. *In re C.W.*, 1st Dist. Hamilton Nos. C-180677 and C-180690, 2019-Ohio-5262, ¶ 14, citing *City of Hamilton v. Combs*, 2019-Ohio-190, 131 N.E.3d 297, ¶ 20 (12th Dist.).

{¶19} R.C. 2917.21(B) does not require more than a single communication. *In re C.W.*, at ¶ 13. Although a violation of the statute does not require multiple communications, the fact that a defendant sent numerous communications is often indicative of the defendant's specific purpose to harass. *Harshbarger* at ¶ 19; *Combs* at ¶ 23 (the fact that the defendant sent several texts and a photograph of his penis to the victim, notwithstanding the victim's objective manifestation that she did not welcome the defendant's advances and did not respond in kind, was plainly indicative of the defendant's purpose to harass the victim).

{¶20} In *State v. Pleatman*, 1st Dist. Hamilton No. C-160234, 2016-Ohio-7659, we rejected the defendant's claim that her legitimate purpose for sending a vitriolic email had been to settle a lawsuit filed by the recipient of the email, and we affirmed her conviction for telecommunications harassment. We said that, "Far from attempting to arrive at a settlement of the suit, [the defendant's] email—particularly, in light of the flyers she distributed and messages she sent [the recipient]—seemed aimed at exacerbating the situation." *Id.* at ¶ 13.

**{¶21}** Despite Powell's claim that her purpose in sending the communications was to try to communicate about the child and to get Haines to be a part of their child's life, the acerbic and taunting tone of her communications over a two-day period despite Haines's clear indications that he wanted no contact with her, evinced Powell's purpose to harass Haines. Even by Powell's own testimony, she understood that the only communication that Haines would find acceptable would be letters, yet she continued to send him texts and email. Construing the evidence and all reasonable inferences in the light most favorable to the state, we hold that the state presented sufficient evidence that Powell sent the communications with purpose to harass Haines. *See Jenks*, 61 Ohio St.3d at 273, 574 N.E.2d 492.

**{¶22}** We further hold that Powell's conviction was not against the manifest weight of the evidence. The trial court was in the best position to judge the credibility of the witnesses. *See State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 165, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The court was entitled to reject Powell's testimony that her purpose in communicating with Haines had not been to harass him. This was not the rare case in which the trial court lost its way and committed such a manifest miscarriage of justice in convicting Powell that her conviction must be reversed. *See Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

**{¶23}** We hold that Powell's conviction was supported by both the sufficiency and the weight of the evidence, and we overrule the sole assignment of error. We affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P.J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its own entry this date.