[Cite as *State v. Cannon*, 2021-Ohio-4198.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210131 |
| | | TRIAL NO. B-9507633 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| DEREK CANNON, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  December 1, 2021


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Ohio Innocence Project* and *Donald Caster,* for Defendant-Appellant.

**WINKLER, Judge.**

{¶1} Defendant-appellant Derek Cannon appeals the Hamilton County Common Pleas Court's judgment denying his Crim.R. 33(A)(6) motion for a new trial on the ground of newly discovered evidence. We affirm the court's judgment.

{¶2} Cannon was convicted in 1996 of aggravated murder for the death of fellow inmate Darrell Depina during the 1993 riot at the Southern Ohio Correctional Facility in Lucasville, Ohio. He unsuccessfully challenged his conviction on direct appeal and in postconviction motions filed in 1996, 1998, and 2009. *See State v. Cannon*, 1st Dist. Hamilton No. C-950710, 1997 WL 78596 (Feb. 26, 1997), *appeal not allowed*, 81 Ohio St.3d 1523, 692 N.E.2d 1024 (1998); *State v. Cannon*, 1st Dist. Hamilton No. C-980389 (Mar. 10, 1999); *State v. Cannon*, 1st Dist. Hamilton No. C-090907 (Jan. 12, 2010).

{¶3} In 2018, Cannon moved under Crim.R. 33(B) for leave to file a Crim.R. 33(A)(6) motion for a new trial on the ground of newly discovered evidence. On appeal from the denial of the motion for leave, we reversed and remanded for a hearing on the matter of leave. *State v. Cannon*, 1st Dist. Hamilton No. C-180474, 2019-Ohio-3941.

{¶4} On remand, the common pleas court effectively granted leave when it conducted an evidentiary hearing on the January 2020 motion from which this appeal derives, seeking a new trial under Crim.R. 33(A)(6) on the ground of newly discovered evidence. Following the hearing, the common pleas court denied a new trial.

{¶5} In this appeal, Cannon presents a single assignment of error challenging the denial of his new-trial motion. We find no merit to that challenge.

*The Trial*

{¶6} Darrell Depina was one of several inmates who was deemed a "snitch" and beaten to death by a "death squad" of fellow inmates during rioting at Lucasville prison. An autopsy showed his cause of death to be skull fractures and a brain injury from two "heavy injuries" to the head.

{¶7} State's witnesses testified to seeing Cannon with the "death squad" in the "snitch" section of the prison, with a weapon in his hand, beating Depina about the head and body. A witness also testified that Cannon had later confessed to having struck someone in the head. Cannon took the stand in his own defense and denied entering the area of the prison where the murders had taken place. Other defense witnesses corroborated his testimony.

{¶8} In rebuttal, the state offered the testimony of jailhouse informant Dwayne Buckley. Buckley testified that he had met Cannon in the Hamilton County Justice Center while serving as a porter in Cannon's pod, that they had discussed the Lucasville riot, and that Cannon had confessed to being part of a group who had tortured and killed "a guard" and shanked a "white guy" in another cell. Buckley stated that Cannon had declared that he would "beat" the charges and avenge himself on any "snitches" who had implicated him. And Buckley stated that he had reported Cannon's confession to law enforcement because he feared for his safety and the safety of others after an argument between the two had escalated into threats by Cannon against Buckley and his family.

{¶9} In surrebuttal, Cannon testified that any contact with Buckley had been in the presence of two corrections officers. And Cannon denied threatening Buckley or confessing to Buckley that he had tortured and murdered a corrections officer.

*The Motion for a New Trial*

{¶10} In his 2020 motion for a new trial, Cannon argued that newly discovered evidence demonstrated a strong probability of a different outcome if a new trial were granted. He supported the motion by reference to evidence outside the record that had been presented on his motion for leave to file a new-trial motion.

{¶11} That evidence included affidavits made by Buckley in April 2017 and May 2018. In his 2017 affidavit, Buckley averred that his trial testimony that "Cannon had confessed to [him] that he had murdered the guard * * * was not true."

3

Buckley also stated that he did not remember Cannon threatening him, and that he had testified against Cannon because law enforcement presented him with "[a]n opportunity to get back at Cannon" for an altercation between the two, by "offer[ing] [him] in exchange for [his statement] * * * some sort of minor incentive, maybe a few days off of [his] sentence." Buckley further stated that, after his release from jail, he ignored a subpoena to testify, but a detective came to his place of work, told him he "had to testify," and drove him to court. Buckley asserted that after his testimony, a state's attorney had "said [his] testimony sealed their case against Cannon." And Buckley insisted that he had made his affidavit not under threat or compulsion, but "to make things right and prevent this from further weighing on [his] conscience."

{¶12} But in his 2018 affidavit, offered by the state in opposition to Cannon's motion for leave, Buckley retracted his 2017 affidavit. He averred that he had testified truthfully at trial, and that his 2017 affidavit had been false and the product of threats against his mother and against his brother's son, who was incarcerated with Cannon at the time.

{¶13} Buckley's brother responded to Buckley's May 2018 retraction of his 2017 affidavit with an affidavit made in June 2018. Buckley's brother denied that he, his son, or his mother had been threatened in connection with Cannon's case.

{¶14} Cannon also offered an affidavit made in 1996 by a state's witness, recanting his trial testimony that he had seen Cannon in the prison with a weapon in his hand. The witness asserted that he had provided false testimony as part of a plea arrangement that allowed him to avoid death-eligible charges and plead guilty to felonious assault.

{¶15} An affidavit was also provided by a private investigator engaged by the Ohio Innocence Project in late 2016 to locate and interview Buckley after he had expressed to family members regret about his testimony at Cannon's trial. The investigator averred that, in interviews beginning in January 2017 that culminated in the making of his April 2017 affidavit, Buckley said that he had been "coached" on his

4

statement to police, that that statement had been prompted by "pressure on his family that 'turned into something else,' " and that his reward had been early release.

{¶16} At the hearing conducted on the new-trial motion, Buckley was put on the stand. But he invoked his privilege against self-incrimination, and the state declined to grant him immunity. The parties stipulated to the authenticity of Buckley's 2017 affidavit and a video of him signing the affidavit, and the common pleas court admitted those exhibits. The parties further stipulated that the recanting state's witness would have testified consistent with his 1996 affidavit.

{¶17} The common pleas court also "accepted" Buckley's 2018 affidavit "as part of the record." Concerning the "veracity" of that affidavit, the defense called the Ohio Innocence Project's private investigator, Buckley's brother and nephew, and the notary for Buckley's 2018 affidavit. The notary testified that Buckley had signed the 2018 affidavit. The private investigator testified that she had contacted Buckley by phone in January 2017, after locating him through his brother, and had met with him in February and secured his affidavit in April. She further stated that Buckley's family members had been present when he signed the affidavit and had expressed fears about a perjury charge for Buckley, but not physical threats by Cannon. Buckley's brother and nephew testified that no family member had been threatened by Cannon.

### No Abuse of Discretion

{¶18} In this appeal, Cannon presents a single assignment of error challenging the denial of his motion for a new trial. We find no merit to this challenge.

{¶19} A new trial may be granted under Crim.R. 33(A)(6) on the ground that "new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at trial." To prevail on a Crim.R. 33(A)(6) motion for a new trial on the ground of newly discovered evidence, the movant must demonstrate that the evidence "(1) discloses a strong probability

5

that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus.

{¶20}  A motion for a new trial is directed to the sound discretion of the trial court, and the court's decision will not be reversed on appeal in an absence of an abuse of that discretion.  *See State v. Williams*, 43 Ohio St.2d 88, 330 N.E.2d 891 (1975), paragraph two of the syllabus.  An abuse of discretion "implies that the court's attitude [was] unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).  An "unreasonable" decision is a decision that is not supported by "a sound reasoning process." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶21}  We note at the outset that, in the direct appeal, Cannon assigned as error the balance struck by the jury in weighing the evidence adduced at trial.  In overruling that assignment of error, this court did not rely on Buckley's trial testimony.  We acknowledged that that there were "inconsistencies among the various witnesses' testimony," and that due to "the nature of this case, the credibility of a number of witnesses on both sides was certainly suspect, a fact of which the jury was assuredly aware."  But based on our review of the testimony provided by witnesses other than Buckley, we found "nothing in the record [to] indicate[] that the jury lost its way when it chose to believe the state's witnesses rather than Cannon and his witnesses."  And we found "more than substantial evidence upon which the jury could reasonably conclude that all of the elements of aggravated murder had been proven beyond a reasonable doubt." *Cannon*, 1st Dist. Hamilton No. C-950710, 1997 WL 78596, at *1-3.

6

{¶22} Buckley's 2017 affidavit recanted his trial testimony that Cannon had confessed to being part of a group who had tortured and killed "a guard" and then gone to "another cell and pulled a white guy out and shanked him." In its entry denying a new trial, the common pleas court noted that the "shanked" "white guy" was never identified, by Buckley or otherwise, as the inmate whom Cannon was convicted of murdering, Darrell Depina. Nor could such an identification have credibly been made, when Depina died of skull fractures and a brain injury from two "heavy injuries" to the head.

{¶23} In deciding the new-trial motion, the court did not discount the credibility of Buckley's affidavit or consider his 2018 retraction of his 2017 recantation. Instead, applying the *Petro* analysis, the court denied a new trial upon its finding that Buckley's 2017 recantation would not create the possibility of a different outcome if a new trial were granted. That finding was not demonstrably the product of an arbitrary or unconscionable attitude and was supported by a sound reasoning process.

*Affirmed*

{¶24} We, therefore, hold that the common pleas court did not abuse its discretion in denying Cannon's Crim.R. 33(A)(6) motion for a new trial. Accordingly, we overrule the assignment of error and affirm the court's judgment.

Judgment affirmed.

CROUSE, P.J., and MYERS, J., concur.


Please note:

The court has recorded its own entry on the date of the release of this opinion.