[Cite as *State v. Jones*, 2024-Ohio-5896.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-240155 |
| | | C-240156 |
| Plaintiff-Appellee, | : | TRIAL NO. 23/CRB/10524 |
| vs. | : | |
| YVETTE JONES, | : | *O P I N I O N* |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: December 18, 2024

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Joshua Loya*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Defendant-appellant Yvette Jones appeals from the trial court's judgments convicting her of assault and overruling her motion for a new trial. In three assignments of error, Jones now argues that the trial court erred in overruling her motion for a new trial, that she received ineffective assistance from her trial counsel, and that her conviction for assault was against the manifest weight of the evidence. Finding Jones's argument to be without merit, we affirm the trial court's judgments.

## I.  *Factual and Procedural History*

{¶2} A complaint was filed in the Hamilton County Municipal Court charging Jones with assault, a first-degree misdemeanor in violation of R.C. 2903.13(A). The alleged victim of this offense was Jones's neighbor, S.G. Prior to trial, Jones filed a notice of an alibi, stating that "she intends to offer evidence of alibi that she was not at the scene of the alleged crime on the day charged, but rather at 7405 N. Liberty Dr. Liberty Township, OH 45044."

{¶3} At a bench trial, S.G. testified that she was attacked in her front yard by Jones and Jones's sister on June 17, 2023. According to S.G., Jones came outside while S.G. was practicing yoga in her front yard and made comments about S.G's yoga practice. Specifically, Jones remarked, "This shit every morning." Jones started to leave, but then returned to S.G. and made additional comments. S.G. told Jones, "I am at peace and I wish you could join me here." Jones became belligerent, prompting her mother, who had also come outside, to restrain Jones and remind her to go to work. Jones then demanded that her sister attack S.G., specifically instructing her sister to "go beat her ass." After her sister began to attack S.G., Jones ran up and joined in the fight. S.G. testified that Jones struck her in the face multiple times. She stated that she was "a hundred percent certain" that it was Jones who struck her because "the other

young lady was no longer physically in contact with us. Jones and I were fighting each other individually after she came up." S.G. explained that the fight ended when a male, whom she did not identify by name, intervened to break it up. According to S.G., these events transpired between 7:30 and 8:30 in the morning.

**{¶4}** S.G. explained that she suffered swelling and bruising on her face around the area of her eyes and nose. A photograph of her injuries was admitted into evidence.

**{¶5}** Jones presented testimony from her mother and her fiancé. Mother testified that she was at Jones's home the morning of June 17, 2023, and that Jones left home around 8:00 that morning for work. According to mother, an altercation occurred between S.G. and mother's other daughter ("sister") after Jones left for work. Mother stated that S.G. swung a broom at sister, broke sister's glasses, and knocked over a plant stand. Mother pulled sister out of the scuffle and took her inside. She testified that only she, S.G., and sister were present during the altercation. In contrast to S.G.'s testimony that a male broke up the fight, mother specifically stated that no male was involved. Mother explained that sister had recently been released from the hospital after suffering from psychosis. On cross-examination, mother agreed that, despite her allegation that S.G. had randomly attacked her mentally vulnerable daughter with a broom, she had not called the police. Rather, mother had told Jones, who stated that she would "take care of it."

**{¶6}** Fiancé testified that he was at Jones's home on June 17, 2023, that he stepped outside to see sister and S.G. arguing, and that he separated them. Fiancé described the incident as not "an actual altercation," but "more like wording." Fiancé testified that he had seen Jones leave for work prior to the altercation between S.G. and sister.

{¶7} Jones testified and denied any involvement in an altercation with S.G. She stated that she was at work at a branch of PNC Bank in Liberty Township at the time of the altercation on June 17, 2023. Jones explained that the Liberty branch is about a 45-minute drive from her home, and that she left home at approximately 8:00 that morning to ensure that she arrived at work by 9:00. Jones acknowledged that S.G. was doing yoga when Jones left for work, but she stated that no words were exchanged between the two. Jones testified that while at work, she received a call from her mother regarding an incident with S.G.

{¶8} On cross-examination, Jones indicated that she had time sheets establishing her presence at work at the time of the altercation, but that she had not provided them to the court because she was never asked to do so. Jones further testified that she and her sister look alike. And she explained that she called the police regarding S.G.'s attack on sister, but that mother elected not to file charges because she did not want to put sister through any related trauma.

{¶9} The trial court found Jones guilty of assault. When announcing its verdict, the court stated:

> I don't find the alibi defense to be credible. There were no independent witnesses to verify defendant was at work. There were no records indicating the defendant was at work presented to the Court. I don't find any of the defense witnesses to be credible.
>
> .   .   .
>
> The only person that I find credible based off this trial was the prosecuting witness, herself. So based off of that, it's going to be a finding of guilty.

{¶10} Prior to sentencing, defense counsel made an oral Crim.R. 29(C) motion

for a judgment notwithstanding the verdict. The motion argued that Jones had newly discovered evidence that she was at work at the time of the assault. The State argued that a Crim.R. 29(C) motion was not appropriate because such a motion applied strictly to jury verdicts. The trial court agreed and denied the motion. The court imposed a suspended sentence of 180 days in jail, a $100 fine, and court costs. It also placed Jones on one year of community control and ordered her to stay away from the victim.

**{¶11}** Post sentencing, Jones filed a motion for a new trial pursuant to Crim.R. 33(A)(6). The motion was based on newly discovered evidence, specifically testimony from PNC Bank Manager Michael Yosafat and video evidence from the bank, that Jones alleged would establish that she was at work at the time of the offense. Along with the motion, an affidavit from Yosafat was filed. The affidavit stated that Yosafat was the branch manager for the PNC Bank branch located at 7405 N. Liberty Drive; that Jones is an employee of PNC Bank; that Jones arrived at work at 9:00 a.m. on June 17, 2023; that security cameras captured Jones parking her vehicle in the parking lot that day and entering the bank; and that he did not receive a subpoena to appear in court until after the date of the appearance had passed.

**{¶12}** The State opposed Jones's motion, arguing that the allegedly newly discovered evidence could have been discovered prior to trial with due diligence.

**{¶13}** The trial court held a hearing on the motion for a new trial. Defense counsel argued that the newly discovered video evidence from PNC Bank depicted Jones entering the bank parking lot prior to 9:00 a.m. on the day of the offense. And counsel explained that the evidence was not discovered prior to trial because counsel had issued a subpoena to the wrong bank branch in Liberty Township.

**{¶14}** The trial court overruled Jones's motion. It noted that an investigator

could have been used to obtain this evidence, particularly because Jones was employed by the bank prior to trial and defense counsel was aware not only of the bank's location, but also the time and date of the offense. The court further noted that it had not been made aware of any issues regarding discovery prior to trial that would have prevented Jones from obtaining this evidence.

**{¶15}** Jones now appeals.

## II. *Motion for a New Trial*

**{¶16}** In her first assignment of error, Jones argues that the trial court erred in overruling her motion for a new trial.

**{¶17}** We review the trial court's ruling on a Crim.R. 33 motion for a new trial for an abuse of discretion. *State v. McNeal*, 2022-Ohio-2703, ¶ 13; *State v. Cannon*, 2021-Ohio-4198, ¶ 20 (1st Dist.). "An abuse of discretion 'implies that the court's attitude [was] unreasonable, arbitrary or unconscionable.'" (Bracketed text in original.) *Cannon* at ¶ 20, quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

**{¶18}** Crim.R. 33(A) sets forth multiple grounds on which a motion for a new trial may be based. Jones filed her motion pursuant to Crim.R. 33(A)(6), which provides that a new trial may be granted "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial."

**{¶19}** To prevail on a motion for a new trial on this basis, Jones had to establish that the newly discovered evidence

"(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to

6

former evidence, and (6) does not merely impeach or contradict the former evidence."

*Cannon* at ¶ 19, quoting *State v. Petro*, 148 Ohio St. 505 (1947), syllabus.

**{¶20}** We find no abuse of discretion in the trial court's denial of Jones's motion for a new trial. As the trial court noted, Jones could have, with due diligence, discovered both the security footage and Yosafat's testimony prior to trial. The bank location was known to Jones throughout the course of these proceedings. In fact, her notice of alibi stated that she was at the exact location from which the security footage was obtained when the assault on S.G. occurred. It would not have been difficult to obtain this evidence prior to trial.

**{¶21}** Further, this newly discovered evidence did not disclose a strong probability that it would change the result if a new trial was granted. *See Cannon*, 2021-Ohio-4198, at ¶ 19 (1st Dist.). Both the security footage and Yosafat's affidavit established that Jones arrived at the bank at 9:00 a.m. on the day of the offense. But S.G. testified at trial that the assault occurred sometime between 7:30 and 8:30 that morning, and both Jones and mother testified that Jones left for work at approximately 8:00 in the morning. So even if the newly discovered evidence were admitted, the evidence introduced at trial would still place Jones at home during a portion of the period in which the assault was alleged to have occurred.

**{¶22}** Because the newly discovered evidence could have been discovered prior to trial with due diligence, and because it did not disclose a strong probability that it would change the result of the trial if a new trial were granted, we hold that the trial court did not err in overruling Jones's Crim.R. 33 motion for a new trial. The first assignment of error is overruled.

### III. Ineffective Assistance

**{¶23}** In her second assignment of error, Jones argues that she received ineffective assistance from her trial counsel. Jones specifically argues that her counsel was ineffective for failing to obtain evidence to corroborate her alibi, and that counsel's failure to do so affected the outcome of the trial.

**{¶24}** Counsel will not be considered ineffective unless her or his performance was deficient and caused actual prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989). Counsel's performance will only be deemed deficient if it fell below an objective standard of reasonableness. *Strickland* at 687-688; *Bradley* at 142. A defendant is only prejudiced by counsel's performance if there is a reasonable probability that the outcome of the proceedings would have been different but for the deficient performance. *Strickland* at 694; *Bradley* at 142. A reviewing court must indulge a presumption that counsel's behavior fell within the acceptable range of reasonable professional assistance. *Strickland* at 689; *Bradley* at 142.

**{¶25}** Despite having knowledge prior to trial (as evidenced in Jones's notice of alibi) of the address of the bank branch where Jones was employed, defense counsel admittedly issued a subpoena to the wrong branch of the bank. Defense counsel did not utilize an investigator to obtain evidence of Jones's employment on the day and time of the offense to corroborate her alibi. And defense counsel failed to request a continuance prior to trial to engage in additional discovery, despite a lack of response from the bank to any subpoenas that were issued. In determining whether counsel's performance was deficient, we consider what reasonable counsel would have done in this scenario. One would reasonably expect, where a notice of alibi has been filed, that counsel would introduce evidence corroborating the defendant's alibi at trial.

{¶26} We need not determine, however, whether counsel's performance was deficient, because Jones has failed to establish the second prong required to succeed on an ineffective-assistance claim. There is not a reasonable probability that the outcome of the proceedings would have been different but for counsel's deficient performance. As we explained in response to Jones's first assignment of error, the evidence that Jones claims her counsel was deficient for failing to procure prior to trial established that she arrived at PNC Bank at 9:00 in the morning on the day of the offense. But Jones's own testimony, as well as the testimony offered by mother, established that she was at home until 8:00 a.m. on the day of the offense. And because S.G. testified that she was assaulted between 7:30 and 8:30 a.m., the evidence presented at trial still placed Jones at home during a portion of the period in which the assault was alleged to have occurred.

{¶27} The record does not establish that Jones's trial counsel rendered ineffective assistance. The second assignment of error is accordingly overruled.

### IV.   *Manifest Weight of the Evidence*

{¶28} In her third assignment of error, Jones argues that the trial court erred in finding her guilty of assault because the conviction was contrary to law and was against the manifest weight of the evidence.

{¶29} When reviewing a challenge to the manifest weight of the evidence, this court must "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 2020-Ohio-4283, ¶ 16 (1st Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶30} Jones was convicted of assault in violation of R.C. 2903.13(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to

9

another or to another's unborn."

**{¶31}** S.G.'s testimony established the elements of assault. She testified that Jones first encouraged sister to attack S.G., and that Jones then joined in the fray herself and struck S.G. in the face multiple times. S.G. suffered swelling and bruising on her face around the area of her eyes and nose.

**{¶32}** While Jones, mother, and fiancé testified that Jones was not present for the attack on S.G., the trial court specifically found that none of these witnesses were credible. As the trier of fact, the trial court was in the best position to judge the credibility of the witnesses. *See State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus; *State v. Shepard*, 2021-Ohio-964, ¶ 62 (1st Dist.). The trial court was entitled to believe the testimony offered by S.G. and reject that offered by Jones's witnesses. Notably, the testimony offered by mother and fiancé conflicted. Mother testified that the only persons present during the altercation were herself, sister, and S.G. She specifically stated that no man was at the scene. In contrast, fiancé testified that he separated S.G. and sister during the fray.

**{¶33}** The record fails to establish that the trial court lost its way and created a manifest miscarriage of justice in convicting Jones. *See Powell*, 2020-Ohio-4283, at ¶ 16 (1st Dist.). We hold that Jones's conviction was not against the manifest weight of the evidence and overrule the third assignment of error.

**{¶34}** Having overruled all of Jones's assignments of error, we affirm the trial court's judgments convicting her of assault and overruling her motion for a new trial.

Judgments affirmed.

**Bock, P.J.,** and **Winkler, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.