# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-250342 |
| | | C-250343 |
| Plaintiff-Appellee, | : | TRIAL NOS. C/24/TRC/28263 |
| | | C/24/CRB/18055 |
| vs. | : | |
| JUAN LUIS GIRON, | : | |
| Defendant-Appellant. | : | *JUDGMENT ENTRY* |
| | : | |

This cause was heard upon the appeals, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed in C-250342. The appeal is dismissed in C-250343.

Further, the court holds that there were reasonable grounds for these appeals, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 3/6/2026 per order of the court.**

**By:**_____
      **Administrative Judge**

[Cite as *State v. Giron*, 2026-Ohio-753.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. | C-250342 |
| | | | C-250343 |
| Plaintiff-Appellee, | : | TRIAL NOS. | C/24/TRC/28263 |
| | | | C/24/CRB/18055 |
| vs. | : | | |
| JUAN LUIS GIRON, | : | | |
| Defendant-Appellant. | : | *O P I N I O N* | |

Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed in C-250342; Appeal dismissed in C-250343

Date of Judgment Entry on Appeal: March 6, 2026

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Verjine V. Adanalian,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David H. Hoffmann*, Assistant Public Defender, for Defendant-Appellant.

**KINSLEY, Presiding Judge.**

{¶1} Defendant-appellant Juan Giron appeals the judgments of the Hamilton County Municipal Court convicting him of operating a motor vehicle while under the influence of alcohol or drugs ("OVI"), driving without a valid license, and possessing an open container of alcohol. Giron argues that the trial court violated his due process rights by allowing the State to amend his OVI citation. He also asserts that police stopped his car without reasonable suspicion that criminal activity was afoot and arrested him without probable cause. He raises no arguments on appeal that challenge the open container charge.

{¶2} After a careful review of the record, we overrule Giron's assignments of error and affirm the trial court's judgments as to the OVI and license charge. We dismiss Giron's appeal as to the open container charge, given that he raised no assignments of error challenging that judgment.

### *Background*

{¶3} On October 19, 2024, police conducted a traffic stop in the Village of Elmwood Place. Giron was arrested and charged in the case numbered C/24/TRC/28263 with OVI in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree, and driving without a valid license in violation of R.C. 4510.12, an unclassified misdemeanor.[1] The citation charging Giron with OVI indicated a breath-alcohol test result of 0.097. In the case numbered C/24/CRB/18055, he was charged with possession of an open container in violation of R.C. 4301.62, a minor misdemeanor.[2]

---

[1] Giron appealed from the judgments in the case numbered C/24/TRC/28263 in the appeal numbered C-250342.

[2] Giron appealed from the judgment in the case numbered C/24/CRB/18055 in the appeal numbered C-250343.

**{¶4}** On January 15, 2025, Giron filed a motion to suppress in the case numbered C/24/TRC/28263. His motion sought to exclude "any tests of [] coordination, sobriety, or alcohol/drug level, including chemical tests; [a]ny observations and opinions of the police officer(s) who stopped, arrested, or tested [him] . . . ; and [a]ny physical evidence obtained by the police." In support of his motion, Giron argued that the police lacked reasonable suspicion to detain him beyond the time it took to issue a traffic citation, that field sobriety tests conducted by police were not in substantial compliance with National Highway Safety and Training Academy ("NHTSA") standards, and that his arrest for OVI was not supported by probable cause.

**{¶5}** The trial court conducted a hearing on the motion to suppress on February 4, 2025. The sole witness was Elmwood Place Officer Cameron Wood, who testified that he had been NHTSA-trained to conduct OVI investigations.

**{¶6}** The State entered a number of stipulations relevant to Wood's testimony. First, it stipulated that Wood did not observe any clues while Giron was driving that NHTSA would recognize as markers for intoxication, nor did Giron make any improper motion while driving. It also stipulated that Giron was stopped because Wood submitted a license plate inquiry that indicated the vehicle was registered to an unlicensed driver. The State further stipulated that Giron did not produce a driver's license when asked to do so by Wood.

**{¶7}** Wood then testified that he ran the plates on Giron's vehicle, discovered that the registered owner was not a licensed driver, and stopped the vehicle. According to Wood, Giron stopped the vehicle "just fine."

**{¶8}** Wood then approached Giron's vehicle and spoke to Giron, who told Wood that he spoke Spanish. Wood accordingly used Google Translate to

communicate with him. Giron told Wood that he did not have a driver's license. In speaking with Giron, Wood noticed that Giron had bloodshot eyes and slurred speech and also smelled an odor of alcohol coming from Giron's car and person. Wood further observed a half-empty 12-ounce can of cold Modelo beer in the backseat of the vehicle on the passenger side, along with a six-pack of unopened beer. Giron admitted to Wood that he had been drinking.

{¶9} The trial court continued the hearing in progress for two days. When the hearing resumed, the State moved to amend the OVI charge from subsection (A)(1)(a) of R.C. 4511.19 to subsection (A)(1)(d).[3] Defense counsel objected to the amendment, arguing that it changed the identity of the crime and, in a general way, how Giron would defend himself. Over Giron's objection, the trial court permitted the amendment. Giron did not seek to continue the suppression hearing.

{¶10} Wood was then recalled to the stand. He testified that, pursuant to his NHTSA training, he conducted a battery of field sobriety tests on Giron. The first test was the horizontal gaze nystagmus ("HGN") test. Wood used Google Translate to explain the instructions to Giron. During the HGN test, Giron exhibited a lack of smooth pursuit, and his eyes were bouncing. But Wood did not ask Giron if he had any eye issues or injuries prior to administering the test, nor did he conduct the test for the proper amount of time. According to Wood, Giron exhibited six out of the six clues for intoxication on the HGN test.

{¶11} Wood then administered the walk-and-turn test. Prior to administering the test, Wood demonstrated the test for Giron and provided verbal instructions

---

[3] The (A)(1)(a) subsection prohibits driving while intoxicated without reference to any particular concentration or substance, whereas the (A)(1)(d) subsection prohibits driving when a person has an alcohol concentration of between 0.08 and 0.17 grams per 210 liters of the person's breath. Violations of both subsections are first-degree misdemeanors for a first offense and carry identical penalties. *See* R.C. 4511.19(A)(1)(a), (A)(1)(d), (G)(1)(a).

5

through Google Translate. Giron was swaying during the instructions and started the test too soon, but performed the heel-to-toe test properly. Giron exhibited seven of eight clues for intoxication during this test.

{¶12} The last test Wood administered was the one-leg stand test. Giron only exhibited one out of four clues during this test, not enough to suggest intoxication.

{¶13} Following these tests, Wood took Giron to the Norwood Police Department to use its intoxilyzer machine. Wood provided Spanish-language instructions to Giron prior to administering the test. Giron indicated that he understood, and Wood demonstrated how he should blow into the machine. The test returned a result of 0.097.

{¶14} On cross-examination, Wood clarified the results of the license plate check he ran on Giron's vehicle. The plate returned as "not valid," meaning the vehicle registration was valid but the driver's license likely was not. On redirect, Wood explained that when he runs a plate, he cannot know who the driver of the vehicle is without further investigation.

{¶15} At the conclusion of the suppression hearing, the trial court granted the motion in part and denied it in part. The trial court first addressed the basis for the traffic stop even though Giron had not challenged it. In this regard, the trial court concluded that reasonable suspicion supported Wood's decision to stop Giron's vehicle. Because Giron's license plate flagged as "not valid," the trial court concluded that Wood acted reasonably in stopping Giron to investigate.

{¶16} The trial court next determined whether the field sobriety tests Wood conducted substantially complied with NHTSA standards. It concluded that the one-leg stand and walk-and-turn tests substantially complied, but the HGN test did not. The trial court accordingly suppressed the results of the HGN test but indicated it

6

would permit Wood to testify to observations he made during the test so long as they were not characterized as results of the HGN test.

{¶17} Lastly, the trial court considered whether probable cause supported Giron's arrest. Considering the totality of the circumstances—which included Giron's bloodshot eyes, odor of alcohol, and slurred speech, and the results of the field sobriety tests—the trial court held that probable cause supported Giron's arrest.

{¶18} On April 1, 2025, Giron entered no contest pleas to all three charges, and the trial court found him guilty. It sentenced him to three days in jail on the OVI charge, with credit for the three days he spent in the Driver's Intervention Program, and a $375 fine, reduced to $275 with credit for jail time. The trial court also imposed a one-year driver's license suspension. On the driving without a license charge, the trial court imposed costs of $49. On the open container charge, the trial court sentenced Giron to a fine of $130.

{¶19} Giron now appeals.

### *Analysis*

{¶20} On appeal, Giron raises two assignments of error, both of which relate solely to the case numbered C/24/TRC/28263. Giron advances no assignments of error that pertain to the case numbered C/24/CRB/18055. We accordingly dismiss appeal numbered C-250343.

{¶21} As to the judgments on appeal, Giron raises two assignments of error. First, he challenges the trial court's decision permitting the State to amend the subsection of R.C. 4511.19 that formed the basis of the OVI charge. Second, he contends that Wood lacked reasonable suspicion to stop his vehicle and probable cause to arrest him for OVI. We disagree with both of Giron's contentions.

7

### A. The State's Amendment

{¶22} In his first assignment of error, Giron argues that the trial court improperly permitted the State to amend the OVI charge from the general impairment subsection to a subsection requiring a chemical test over the legal limit of alcohol during the hearing on his motion to suppress. He argues that the amendment changed the identity of the crime and prejudiced his defense.

{¶23} "Whether an amendment changed the identity of the crime is a question of law that we review de novo." *State v. Rike*, 2020-Ohio-4690, ¶ 21 (1st Dist.). Where an amendment does not change the name or identity of the crime, we review the trial court's decision to permit an amendment for an abuse of discretion. *State v. Ham*, 2017-Ohio-9189, ¶ 13 (1st Dist.). "An abuse of discretion implies that the court's attitude [was] unreasonable, arbitrary or unconscionable." (Cleaned up.) *State v. Jones*, 2024-Ohio-5896, ¶ 17 (1st Dist.). In addition, to show reversible error, a defendant must demonstrate not only that the trial court abused its discretion, but also that the amendment otherwise hampered or prejudiced the defense. *Id.* at ¶ 14.

{¶24} Crim.R. 7(D) permits a trial court to amend a complaint at any time so long as the amendment does not change the name or identity of the crime. A change in name or identity occurs "when an indictment is amended so that the offense alleged in the original indictment and the offense alleged in the amended indictment contain different elements requiring independent proof." (Cleaned up.) *Rike* at ¶ 23.

{¶25} With regard to OVI charges specifically, "[t]he amendment of a criminal charge from one subparagraph of R.C. 4511.19(A) to another subparagraph of the same subsection does not change the name and identity of the offense charged within the meaning of Crim.R. 7(D)." *State v. Campbell*, 2003-Ohio-6804, syllabus. Thus, the State's amendment did not run afoul of the terms of Crim.R. 7(D) because it did not

change the name or identity of the crime.

{¶26} We therefore consider whether the trial court's decision permitting the State to amend the OVI charge constituted an abuse of discretion and, if so, whether it prejudiced Giron's defense. The amendment did neither. As to whether the trial court abused its discretion, Giron's OVI citation already recorded his 0.097 breathalyzer result, so the information was not a surprise. And the amendment was made during the suppression hearing, giving Giron plenty of time to plan for trial. Moreover, Giron did not request a continuance, nor did he identify any specific prejudice he faced as a result of the change in subsection. Under these circumstances, Giron was not prejudiced by the amendment, and the trial court did not abuse its discretion in permitting it.

{¶27} Therefore, we overrule Giron's first assignment of error.

### B. Motion to Suppress

{¶28} In his second assignment of error, Giron argues that the trial court erred in denying his motion to suppress. First, he asserts that the traffic stop was not supported by reasonable suspicion of illegal activity. Second, he asserts that his arrest was not supported by probable cause.

{¶29} We review a motion to suppress under a blended standard of review. *See In re J.T.*, 2023-Ohio-2695, ¶ 15-16 (1st Dist.). Under this standard, we accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* at ¶ 15. We then review de novo whether the facts meet the applicable legal standard. *Id.*

#### 1. *Reasonable Suspicion for the Traffic Stop*

{¶30} Giron first argues that Wood lacked reasonable suspicion to stop his vehicle. The trial court concluded that Wood acted reasonably because the plates on

Giron's car flagged as "not valid."

**{¶31}** "A traffic stop initiated by a police officer constitutes a seizure within the meaning of the Fourth Amendment." *State v. Slaughter*, 2018-Ohio-105, ¶ 10 (1st Dist.). A police officer's decision to stop an automobile is reasonable where the officer has either probable cause or reasonable suspicion to believe that a traffic violation has occurred. *State v. Waters*, 2025-Ohio-4479, ¶ 11 (1st Dist.). "If a reasonable articulable suspicion exists, the officer may conduct an investigatory stop in order to confirm or refute his suspicion." (Cleaned up.) *State v. Brown*, 2020-Ohio-896, ¶ 10 (1st Dist.). To determine whether an officer had reasonable suspicion to stop a vehicle, a court examines the totality of the circumstances and determines whether a reasonable officer would believe a traffic violation occurred. *Id.* at ¶ 11.

**{¶32}** Reasonable suspicion easily exists in this case. Wood ran the license plate of Giron's vehicle in a police computer system and learned it was "not valid." This meant the car was registered to an unlicensed driver. Given this information, Wood was reasonably suspicious that the driver of the vehicle may not be lawfully operating it. Giron points out that Wood had no idea who was actually driving the vehicle. But this explains why Wood acted reasonably in investigating whether the driver of the vehicle had a valid license.

**{¶33}** The trial court did not err in finding that Wood's decision to stop Giron's car was supported by reasonable suspicion.

### 2. *Probable Cause for the Arrest*

**{¶34}** Giron next argues that his arrest was not supported by probable cause. In particular, he contends that the trial court improperly considered the suppressed HGN test in determining probable cause. He also argues that the walk-and-turn test did not substantially comply with NHTSA standards and should have been

10

suppressed. Excluding the HGN and walk-and-turn tests, Giron contends that Wood's remaining observations did not amount to probable cause to arrest him for OVI.

{¶35} When reviewing "whether an officer had probable cause to arrest, courts examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." (Cleaned up.) *State v. Duncan*, 2024-Ohio-5290, ¶ 9 (1st Dist.). An arrest for OVI is supported by probable cause "when at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source . . . sufficient to cause a prudent person to believe that the suspect was driving under the influence." (Cleaned up.) *Id*. at ¶ 9.

{¶36} Probable cause to arrest a person for OVI need not be based solely on the results of field sobriety testing. *State v. Walker*, 2023-Ohio-3586, ¶ 27 (7th Dist.). Rather, the totality of the circumstances can support probable cause even when no field sobriety tests were given or when the results of field sobriety testing are excluded because they were not obtained in substantial compliance with NHTSA standards. *State v. Hall*, 2005-Ohio-4526, ¶ 21 (2d Dist.). Thus, a person can be lawfully arrested for OVI even without the benefit of field sobriety testing. *See, e.g., State v. Wright*, 2022-Ohio-1815, ¶ 36 (11th Dist.) (noting that slurred speech is a sign of impairment which supports probable cause for OVI); *State v. Hostetler*, 2019-Ohio-3413, ¶ 8 (9th Dist.) (noting that factors like odor, slurred speech, and bloodshot eyes can contribute to probable cause for OVI).

{¶37} Here, even excluding the HGN and walk-and-turn tests, Wood had probable cause to arrest Giron. Wood smelled alcohol coming from Giron's car and from Giron himself. Giron had bloodshot eyes and slurred his speech. Giron also had a half-empty cold beer in the car, another six-pack in the back, and admitted to

drinking. Giron also swayed while Wood instructed him on the walk-and-turn test, demonstrating that Giron was likely impacted by the alcohol he had consumed. Under the totality of the circumstances, a reasonably prudent person would believe that Giron was driving under the influence of alcohol. The trial court did not err in overruling Giron's motion to suppress.

{¶38} We accordingly overrule Giron's second assignment of error.

### *Conclusion*

{¶39} The trial court did not abuse its discretion in permitting the State to amend the statutory subsection for the OVI charge, nor did it err in denying Giron's motion to suppress. We accordingly overrule Giron's assignments of error and affirm the judgments of the trial court in the appeal numbered C-250342. We dismiss the appeal numbered C-250343, as Giron has not raised any assignments of error relevant to that appeal.

Judgment accordingly.

**CROUSE** and **BOCK, JJ.,** concur.